CAMPEAU GOODSELL SMITH
A Law Corporation
SCOTT L. GOODSELL, SBN 122223
MARC L. PINCKNEY, SBN 127004
440 N. First Street, Suite 100
San Jose, California 95112
(408) 295-9555

Former Attorneys for Reorganized Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: ) | Case No. 01-55137-wsj |
| ) | |
| SILICON VALLEY TELECOM ) | CHAPTER 11 |
|    EXCHANGE, LLC, ) | |
| ) | Date: July 17, 2008 |
|                   Debtor. ) | Time: 3:00 p.m. |
| _____ ) | Judge: Hon. Arthur S. Weissbrodt |
| | 280 S. First Street, Room 3022 |
| | San Jose, California |

**SUPPLEMENTAL RESPONSE
TO DEBTOR'S FURTHER OBJECTIONS TO FINAL APPLICATION FOR
COMPENSATION AND REIMBURSEMENT OF EXPENSES**

Applicant Campeau Goodsell Smith ("CGS") hereby responds to the Further Brief filed by Reorganized Debtor SVTX to CGS' final fee application and represents:

**INTRODUCTION**

At the outset of the May 22nd hearing in this matter, the Court offered to allow SVTX/SVTIX/Rubio "additional limited briefing to supplement the blanket request ['to state very specifically the fees that appear to the Debtors to represent duplicative or unnecessary or inappropriate work or too much time billed on a specific project and why'] to supplement the

blanket request ... [since] there's absolutely no substance to the request." The Court then proceeded with "oral argument now on the propriety of this retroactive increase in the hourly billing rates and the enhancement fee request that is common to all three cases."

In their Further Brief, SVTX/SVTIX/Rubio have *submitted nothing* regarding "the fees that appear to the Debtors to represent duplicative or unnecessary or inappropriate work or too much time billed on a specific project and why" to supplement the blanket request and the Court may therefore conclude that "there's absolutely no substance to the request" and determine that the CGS fees are proper and unobjectionable as submitted.

However, *contrary to the Court's clear instructions* regarding submission of the matter, SVTX/SVTIX/Rubio have instead submitted new and inapposite arguments on the propriety of the revised/enhanced fees sought by CGS in its final fee application.

Even so, those arguments add nothing to the remaining issue before this Court.

**LEGAL ARGUMENT**

At the outset, CGS believes that the Debtors' Further Brief should be stricken *in toto* since it defies this Court's specific order allowing additional briefing. However, even considered on its merits, the Further Brief is wholly lacking in apposite case authority – fees sought pursuant to Bankruptcy Code sec. 328 et al. are subject to specific Federal law which preempts the California law interpretations cited by the Debtors. Finally, in light of the foregoing, CGS should be entitled to sanctions against Debtor's lawyers for their willful violation of this Court's order.

**A.** **CGS Requests That the Further Brief Be Stricken**

At the May 22nd hearing, the Court bifurcated its consideration of the CGS final fee applications into two segments: (a) "oral argument *now* on the propriety of this retroactive

increase in the hourly billing rates and the enhancement fee request that is common to all three cases,[1]" and (b) "the blanket request that has been made for reduction of fees in the three cases."

Item (a) was argued and submitted.

Regarding item (b), the Court offered to permit additional limited briefing: "[I]f the Debtors want this Court to consider seriously their request for a blanket reduction of the fees, then the three Debtors need to state very specifically the fees that appear to the Debtors to represent duclicative or unnecessary or inappropriate work or too much time billed on a specific project and why. ***I can permit either additional limited briefing to supplement the blanket request, or the Debtors can stand on the briefing as submitted***, and the Court will take all three fee applications under submission. But there's absolutely no substance to the request."

Clearly, Debtors were not given an option to file new briefs and/or offer additional oral argument on item (a).

Debtors' counsel Cullen *was both aware and made aware* of the briefing subject:

CULLEN: Your Honor, if it may please the Court, ***we're willing to withdraw the specific demand reductions***. They were based upon the Court's comments at the January hearing about the problem with consolidation, but in the interest of trying to reach a settlement to conclude this matter, we are willing to withdraw that and proceed on the theories surrounding the contract rate and the amount of money that's involved, from that perspective.
COURT: ***Okay. So no more briefing?*** I mean it's up to you. I've given you the opportunity. You either do it or you don't, or you try to settle it and then you still have your option to brief or not brief.
CULLEN: That's fair, sir. We'll try to settle when we settle the option [sic].

When Mr. Cullen subsequently decided that the Debtors were NOT intending to identify or seek "specific demand reductions," it was incumbent upon him to so advise the Court and CGS, in which event "the Debtors can stand on the briefing as submitted, and the Court will

---

[1]The Court reiterated: "***Now, today***, other than just telling you that and giving you a briefing schedule, if you want it, ***is for the discussion of the – any oral argument that somebody wants to make about the propriety of this retroactive increase in the hourly billing rates***. If you don't have any argument to make, that's fine too." (5/22/08 Hrg.Trans., p. 8).

take all three fee applications under submission." (5/22/08 Hrg.Trans., p. 7). Instead, Debtors' counsel has sought – without this Court's permission – to reargue matters already submitted.

The proper remedy in this instance is for this Court to strike the Further Brief as an impermissible expansion of its prior briefing order in this matter.

### B. Debtors' Citations to California Legal Opinions Are Inapposite

Long-established Federal law doctrine mandates that certain federal statutes or laws completely preempt any state law applications. Thus, "the Supreme Court has concluded that the preemptive force of some federal statutes is so strong that they 'completely preempt' an area of state law. In such instance, any claim purportedly based on that preempted state law is considered from its inception, a federal claim, and therefore arises under federal law." *In re Miles*, 430 F.3d 1083, 1088 (9th Cir. 2005). Under "complete or super preemption," courts have reasoned that, by legislating within a given area, Congress intended to fully occupy that area. Thus, any attempt to claim a remedy outside the Congressional scheme is preempted whether there is a direct conflict with state law. "When there is a finding of complete preemption, total occupation by the federal scheme pushes aside any state law claims in the area." *Assoc. Builders & Contractors Inc. v. Local 302 Intl. Broth. of Electrical Workers*, 109 F.3d 1353, 1356 (9th Cir. 1997).

Specific examples of complete preclusion by the Bankruptcy Code include: state tort claims preempted by Code sec. 303(i) on involuntary petition damages (*Miles*, supra), and CCP preference avoidance powers preempted by Code sec. 544 et seq. (*Sherwood Partners v. Lycos*, 394 F.3d 1198 (9th Cir. 2005).

Similarly, the compensation of trustees, attorneys and professional persons employed by a Chapter 11 debtor are governed by Code sec. 328 et seq. These Federal Bankruptcy Code provisions completely preempt California state law provisions under the California B&P Code.

Thus, even now that the Chapter 11 case is concluded, CGS cannot resort to the California Superior Court to seek a judgment for its fees – only this Bankruptcy Court has jurisdiction to consider CGS fee application under the complete preemption doctrine.

Thus, while the California legal opinions proffered by the Debtors may be a correct statement of California law on the topic, such opinions are not germane to interpretation or application of Bankruptcy Code sec. 328 et seq.

**(1) Bankruptcy Code sec. 328 et seq. Allows Fee Enhancements**

As set forth in Commercial Consortium, a bankruptcy court may allow readjusted billing rates when payment has been materially delayed: "The issue here is not whether the firm's services were so extraordinary as to be deserving of a bonus for results. The firm's work was highly satisfactory and produced an excellent result for the estate, but probably could not be characterized as exceptional in the sense of justifying a bonus under the *Manoa Finance* standard. Rather the question is whether solid, competent work that produces good results deserves to be paid at a rate that takes into account the time value of money, when the payment is substantially delayed." *In re Commercial Consortium of California*, 135 B.R. 120, 126 (Bkrtcy.C.D.Cal. 1991); see also, *In re Cedic Development Company*, 219 F.3d 1115, 1116-1117 (9th Cir. 2000).

Indeed this Court, whether wittingly or not, has allowed various law firms to submit final billing statements with annually readjusted rates without prior notice to the Court or creditors. (See, e.g., billing rate summary attached to prior Goodsell Declaration).

Alternately, the Ninth Circuit has encouraged fee enhancement based upon a multiplier against a lodestar calculation. See, *In re Manoa Finance Co.*, 853 F.2d 691 (9th Cir. 1988); *In re DWGK Restaraunts*, 108 B.R. 194 (Bkrtcy.S.D.Cal. 1989).

California legal opinions do not override (nor do they even address) the provisions of Bankruptcy Code sec. 328 et seq. which are applicable to the instant CGS fee application.

**(2) CGS Has Provided Uncontroverted "Market Rate" Evidence**

As set forth in CGS' previous Response, to determine prevailing market rates for bankruptcy services, the relevant legal community is the "forum district." *In re Buckridge*, 367 B.R. 191, 205-206 (Bkrtcy.C.D.Cal. 2007); *Mendenhall v. Natl Transp. Safety Bd.*, 213 F.3d 464, 471 n.5 (9th Cir. 2000), *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997); *Gates v. Duekmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). "Declarations by the applicant and other attorneys regarding prevailing market rates in the Central District of California are sufficient to establish the appropriate rate in this district for lodestar purposes." *Buckridge*, 367 B.R. 191, 205-206; *Mendenhall*, 213 F.3d at 471 n.5. In *Lawler*, the Fifth Circuit stated that "[n]o expert testimony was required as to the current hourly rates for attorneys since the bankruptcy and district courts are already very familiar with prevailing community standards." *In the Matter of Lawler*, 807 F.2d 1207, 1212 (5th Cir. 1987).

As set forth in the accompanying Goodsell declaration, CGS billing rates are at the lower end of the prevailing San Jose corporate bankruptcy market. If CGS billing rates from 2001 are applied to the SVTX case from October 2001 until September 2006, then CGS billling rates are about below market rates for comparably skilled attorneys. Under such circumstances, this Court may set the lodestar based on CGS historically-adjusted fee rates rather than its 2001-based fee rates. See, e.g., *Buckridge*, 367 B.R. at 205-206 (lodestar not fully compensatory in this case where applicant's rates are below prevailing market rates for comparably skilled attorneys; fee enhancement allowed); *Cedic, supra*, 219 F.3d at 1117 ("Moreover, the district court's premise that the hourly rates set by the Firm would indicate the lodestar amount was

incorrect. The rates were bargain rates not incorporating the *Kerr* factors. Not to allow the $10,000 enhancement would be to pay below the lodestar.")

The "readjusted" CGS billing rates properly reflect the market value for its services.

**C. Sanction Should Be Awarded for Violation of This Court's Order**

As set forth above, Debtors counsel Cullen has filed an unauthorized brief, containing inapposite argument and legal opinion, causing CGS to incur significant unnecessary expense. CGS estimates that its additional time and expense incurred in reviewing, researching and responding to this Debtor's Further Brief has or will exceed $4,500. This Court may and should sanction the Debtors and/or attorney Cullen for intentional violation of its briefing order[2].

**CONCLUSION**

This Debtor, its creditors and especially Fred/Karen Rubio have obtained excellent results from superbly qualified attorneys at more-than-reasonable billing rates.

This Debtor has failed to offer any factual basis for reducing attorney hours billed.

This Debtor has failed to demonstrate that CGS' adjusted historically billing rates are in any way unreasonable for the San Jose bankruptcy services market.

CGS does not seek any greater compensation than its *regular hourly rates* dictate.

Federal bankruptcy law fully authorizes the compensation sought by CGS, whether by applying a lodestar multiplier (*Manoa/Cedic/Buckridge*) or by rate readjustment to compensate for delayed payment (*Commercial Consortium/Cedic*).

DATED:  July 3, 2008                    CAMPEAU GOODSELL SMITH

---

[2]Albeit any monetary sanction directed against this Debtor only penalizes its creditors and CGS insofar as such expenditure delays repayment of principal monies owed to them.

| | |
|---|---|
| 1 | By   /s/ Scott L. Goodsell |
| 2 |       Scott L. Goodsell<br>      Former Attorneys for Reorganized Debtor |