EDWARD F. CULLEN (CA Bar No. 133155)
WILLIAMS, PINELLI & CULLEN, LLP
110 North Third Street
San Jose, California 95112
Telephone:  (408) 288-3868
Facsimile:  (408) 288-3860

Attorneys for
SILICON VALLEY TELECOM
EXCHANGE, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA- SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>SILICON VALLEY TELECOM EXCHANGE, LLC<br><br>Debtor. | CASE NO. 01-55137-ASW<br><br>Chapter 11<br><br>**DEBTOR'S REPLY TO SUPPLEMENTAL RESPONSE TO DEBTOR'S FURTHER OBJECTIONS TO FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES**<br><br>Date:  July 17, 2008<br>Time:  3:00 p.m.<br>Judge: Hon. Arthur S. Weissbrodt<br>        280 South First Street, Room 3022<br>        San Jose, CA 95113 |

Silicon Valley Telecom Exchange, LLC (hereinafter "SVTX"), Silicon Valley Telecom & Internet Exchange (hereinafter "SVTIX"), and Rubio & Associates (hereinafter "RA") (collectively also referred to as the "Debtors") hereby provide this reply to Campeau Goodsell Smith's (hereinafter "CGS") supplemental response as follows.

## INTRODUCTION

A generous briefing schedule was provided by this Court to allow the parties a full and complete opportunity to present their position. Unfortunately the opportunity permitted the litigants to identify the core of the dispute and the clearly opposite positions has become clouded by oratory and briefing. The position of the Debtors is as follows.

1. A clear and unambiguous fee contract was freely entered detailing the criteria which would

- 1 -

DEBTOR'S REPLY TO SUPPLEMENTAL RESPONSE TO DEBTOR'S FURTHER OBJECTIONS TO FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

Case: 01-55137   Doc# 1058   Filed: 07/10/08   Entered: 07/11/08 13:41:52   Page 1 of 11

govern the attorney/client relationship.

2. The terms of the agreement were selected and incorporated into the attorney/client agreement by its sole author, the counsel of record. CGS knew its rights, duties and obligations.

3. CGS communicated with the client via monthly invoices intended to detail the exact work performed during the billing period and the cost for the services rendered. It defies credibility to accept the proposition that from the inception of the attorney/client relationship to the filing of the initial application for fees no one but a secretary reviewed a bill that was growing to almost two million dollars.

4. A sworn statement by CGS to this Court under penalty of perjury that the Preliminary Billing Application that was submitted was accurate clearly establishes that the declarant knew its hourly rate being charged the client.

5. No explanation exists as for why the client was not advised of a retroactive rate increase. Almost a full year passes between the Preliminary Fee Application and the Final Fee Application. The Bankruptcy Trustee, creditors, the lenders and the client all evaluate the bill in its entirety, time spent, work performed and money spent. What potential for success would any of these parties have in challenging hours billed if they acted in a manner similar to the law firm seeking a retroactive change?

6. If CGS had requested a rate increase and the client had approved but subsequent invoices had continued at the old agreed upon discontinued rate then an argument could be made for a retroactive recovery. Here the involvement of the client in a key decision is being eliminated by CGS. Future client decisions based on a cost analysis are eliminated as the rate which the client believes it is spending is rendered void.

Debtors respectfully request the **$492,502.20** attributable to a retroactive rate increase be deleted from the Final Application for Compensation

### **DEBTORS HAD RIGHT TO FILE FURTHER PAPERS**

The Court was clear that Debtors would have the opportunity to file "**any new papers**" not just those limited to the specific demand reductions, which in any event at the end of the hearing on May 22, 2008, the Debtors withdrew as a basis of contention, leaving the only issue to be Debtors' opposition

- 2 -
DEBTOR'S REPLY TO SUPPLEMENTAL RESPONSE TO DEBTOR'S FURTHER OBJECTIONS TO FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

Case: 01-55137   Doc# 1058   Filed: 07/10/08   Entered: 07/11/08 13:41:52   Page 2 of 11

to CGS's retroactive rate increases without the consent or knowledge of the Debtors and the contract law issues involved.

The Court was clear that Debtors would have the opportunity to file any papers;

> **"The Court: Thank you. If you're going to file any new papers, have them filed on or before June 19. The Goodsell firm can respond by July 3. The Debtors can have until July 10 to reply, and there will be a continued hearing on these fee applications on July 17 at 3:00 p.m."** (RT page 33, lines 16-20).

And:

> **"And again, you're going to have an opportunity to file papers."** (RT page 25, lines 18-19).

The only issue being briefed is the legal and ethical issue violations of CGS by their totally inappropriate retroactive increase in the billing rates without the permission or knowledge of the Debtors; a corollary issue is the binding nature of the contract between them.

Debtors' contend they have the Court's permission, contrary to CGS' contention, to provide further briefing on this significant issue where CGS increased their billings by **$492,384.70** without the Debtors' knowledge or consent.

## CALIFORNIA LAWS, STATUTES AND STATE BAR OPINIONS ARE CONTROLLING

California statutes and case law, and California State Bar guidelines, statutes, and opinions are controlling on the issue of CGS's legal and ethical obligations to its' clients; CGS's improper behavior in increasing its billings rates without the knowledge of the Debtor; and the attorney client fee contract.

For CGS to practice in this Federal Court, they must be members of a State Bar and in this case, Scott Goodsell (SBN 12223) and Mark Pinckney (SBN 127004) are members of the California State Bar (as well as other member of CGS who worked on this case). CGS' claim that because this hearing is in Federal Bankruptcy Court, that California law does not apply to CGS' legal and ethical obligations to their clients, is without any legal or logical merit.

## CALIFORNIA AUTHORITY IS NOT PRE-EMPTED BY FEDERAL LAW

Although the compensations of trustees, attorneys and professional persons employed by Chapter 11

- 3 -

DEBTOR'S REPLY TO SUPPLEMENTAL RESPONSE TO DEBTOR'S FURTHER OBJECTIONS TO FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

Case: 01-55137    Doc# 1058    Filed: 07/10/08    Entered: 07/11/08 13:41:52    Page 3 of 11

Although the compensations of trustees, attorneys and professional persons employed by Chapter 11 Debtor are guided by Code Section 28 et seq., Federal Bankruptcy provisions do not pre-empt California State provisions under the California Rules of Professional Conduct, California Business and Professions Code, California State Bar legal and ethical opinions and California contract law. Scott Goodsell and Mark Pinckney, and other CGS counsel, are bound by California law on this issue regarding their duties to their clients. CGS can cite no Federal case that states that the Bankruptcy Code provides any Federal Preemption of California law on these issues.

There is no Federal Bar Exam; an attorney must be a practicing member of a State Bar to practice in Federal court. If an attorney is sanctioned in State Court with suspension of license he cannot practice in Federal Court.

CGS presents a profound misunderstanding of Federal Preemption and therefore raises irrelevant, illogical and inconsequential opposition. Correctly stated, Federal Preemption of State law can occur in three situations:

1. Where Congress explicitly preempted State law;

2. Where preemption is implied because Congress has occupied the entire field;

3. Where preemption is implied because there is an actual conflict between Federal and State law. *Schneidewind v. ANR Pipeline Co.*, (1988) 485 U.S. 293, 299-300.

CGS cites no Federal Bankruptcy code, Federal statute or Federal case stating that Congress explicitly preempted State law on the issue of a bankruptcy attorney's legal and ethical obligations to its clients under California law or that the attorney client fee agreement is meaningless.

Indeed, there is a presumption against preemption of state laws dealing with subject matter traditionally governed by state law; Congressional intent to preempt such laws must be **"clear and manifest."** See *Medtronic, Inc. v. Lohr* (1996) 518 US 470, 496-503, 116 S.Ct. 2240, 2256-2259; *Cipollone v Liggett Group, Inc.* (1992) 505 US 504, 516, 112 S.Ct. 2608, 2617.

CGS provides no analysis of Congress's intent to preempt California state case law, statutes, and state bar opinions on the issue of a California attorney's legal and ethical obligations to his client. All

- 4 -
DEBTOR'S REPLY TO SUPPLEMENTAL RESPONSE TO DEBTOR'S FURTHER OBJECTIONS TO FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

Case: 01-55137    Doc# 1058    Filed: 07/10/08    Entered: 07/11/08 13:41:52    Page 4 of 11

history, no case or statute evidencing a "clear and manifest" intent by Congress to preempt California law regulating its' attorneys.

CGS has provided no Federal code or Federal case stating that Federal Preemption is implied because Congress has occupied the entire field or that there is an actual conflict between Federal and State law pertaining to a California attorney's legal and ethical obligations to his client, or to the fee contract, nor could they do so as no such code or case exists.

The "mere volume and complexity" of regulations does not compel the conclusion that the federal agency has sought to occupy the entire field and preempt state regulation. *Hillsborough County, Fla. v Automated Med. Labs.* (1985) 471 US 707, 718, 105 S.Ct. 2371, 2377. Even if Federal Bankruptcy provisions are voluminous and complex, that does not mean they preempt California regulation of its bar members and their duties to their clients, especially in the realm of attorney client fee agreements.

There is no legal authority that a California attorney client fee agreement and a California attorney's legal and ethical obligations to his clients become meaningless when the attorney is in Federal court, especially when a prerequisite for an attorney to practice in Federal Court is membership in a State Bar. Federal Preemption is nothing more than a red herring designed to cloud the contract law issue in this case and CGS's legal and ethical violations under California law.

### THE CONTRACT BETWEEN CGS AND THE DEBTORS HAS LEGAL EFFECT AND FORCE SUCH THAT CGS CANNOT INCREASE ITS RATES BECAUSE THEY PROVIDED NO NOTICE TO THE DEBTORS

It was not within the terms of the fee agreement between CGS and the Debtors that CGS could apply for a retroactive billing increase. This is simple contract law. CGS prepared the attorney client fee agreement and must be bound by it's terms. This matter is that simple.

The unilateral billing increase to each Debtor totals $492,502.20 broken down as follows:

| | |
|---|---|
| **SVTX:** | **$437,384.70** |
| **SVTIX:** | **$ 37,113.50** |
| **RA:** | **$ 18,004.00** |
| **Total:** | **$492,502.20** |

///

///

- 5 -
DEBTOR'S REPLY TO SUPPLEMENTAL RESPONSE TO DEBTOR'S FURTHER OBJECTIONS TO FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

Case: 01-55137   Doc# 1058   Filed: 07/10/08   Entered: 07/11/08 13:41:52   Page 5 of 11

The unilateral increase was done at the end of the case without any notice or warning to the Debtors. In fact, CGS tried to pull a fast one by hiding the increase in their final fee application without telling the Debtors that they were going to seek retroactive billing increases nor did CGS explain in the fee agreement that they could or would apply for increased billing rate at the end of the case. This conduct, in addition to demonstrating CGS' unclean hands, was all done in violation of California law.

## CGS VIOLATED CALIFORNIA LAW, STATUTES AND STATE BAR OPINIONS

The Debtors point out the Mr. Rubio relied on the attorney/client fee agreements that he signed with CGS and the leading case on point is *Severson & Werson v. Bollinger* (1991) 235 Cal.App.3d 1569. The *Severson* Court found that the attorney fee agreements are, **"...strictly construed against the attorney."** *supra* at 1572; that attorneys have a professional responsibility to make sure the clients understand the billing procedures and rates, such that **"This responsibility logically precludes any changes in agreed upon rates without notification"** *supra* at 1573; and finally *Severson* held that a law firm **"...could not unilaterally change the hourly rates."** *supra* at 1572.

Ambiguities in attorney fee agreements are construed against the attorney. *Preston v. Herminghaus* (1930) 211 Cal. 1, 9.

CGS violated California Rules of Professional Conduct 3-500 requiring the attorney to keep **"a client reasonably informed about significant developments relating to the employment or representation..."** Obviously CGS failed to inform the Debtors of the unilateral change in its billing rate when CGS presented its Final Fee Application containing the changed billing rate from 2001 to August, 2005. CGS was in clear violation of Rule 3-500.

CGS violated Business and Professions Code 6068(m) which provides that it is the responsibility of an attorney **"to keep clients reasonably informed of significant developments in matters with regard to which the attorney has agreed to provide legal services."**

It is certainly highly significant when an attorney unilaterally increases its billings by $492,502.20 without keeping the client informed of the proposed increase.

CGS violated Business and Professions Code Section 6148 requiring that a written fee contract

- 6 -
DEBTOR'S REPLY TO SUPPLEMENTAL RESPONSE TO DEBTOR'S FURTHER OBJECTIONS TO FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

Case: 01-55137   Doc# 1058   Filed: 07/10/08   Entered: 07/11/08 13:41:52   Page 6 of 11

must contain, **"any basis for compensation including, but not limited to, hourly rates, statutory fees..."**. Yet CGS never explained in the fee contract that they could or would attempt to increase their hourly billing rates at the very end of the case over what had been actually billed, the monthly statements to the Debtors upon which the Debtors relied.

CGS violated California State Bar Rules for billing. Debtors have cited California State Bar Arbitration Advisory 95-02 which provided that, **"Increases in hourly rates are acceptable if allowed in the fee agreement, but only with proper notice to the client."** CGS does not dispute that it never provided any notice of retroactive increase in its billing rates to the Debtors.

California State Bar Arbitration Advisory 95-02 relied on the *Severson & Werson* case, supra, noting that **"...held as a matter of law that the law firm could not unilaterally change the hourly rates."** Equally significant is State Bar Formal Opinion No. 1996-147 which provides in reliance upon *Severson & Werson* case that, **"An attorney may not recover a fee in excess of that which was explained to the client, and to which the client has consented."** (Opinion No. 1996-147, page 2).

Finally, Debtors have referred to LACBA Opinion No. 479 (1994) which held that the duty of an attorney **"...precludes unilateral changes in the agreed upon fee arrangements and requires the attorney to notify the client of any changes in the arrangements and secure the client's consent to these changes."**

It is without dispute that CGS' behavior was in violation of standards set forth for California attorneys in the *Severson & Werson* case, California Rule of Professional Conduct 3-500, California Business and Professions Code Section 6068(m) and Business and Professions Code Section 6148. CGS also violated California State Bar rules for billing including Arbitration Advisory 95-02, State Bar Formal Opinion No. 1996-147 and LACBA Opinion No. 479 (1994).

The contract between CGS and the Debtors has authoritative force and CGS violated the terms of the contract as well as the aforementioned California *Severson & Werson* case and the statutes and opinions cited. They did this at their peril and CGS cannot be entitled to benefit from their egregious behavior.

- 7 -

DEBTOR'S REPLY TO SUPPLEMENTAL RESPONSE TO DEBTOR'S FURTHER OBJECTIONS TO FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

Case: 01-55137    Doc# 1058    Filed: 07/10/08    Entered: 07/11/08 13:41:52    Page 7 of 11

## CGS VIOLATED ITS FIDUCIARY OBLIGATIONS TO ITS CLIENTS

As previously set forth in the Debtors' Further Brief in Opposition to Application for Final Reimbursement, Debtors pointed out that the attorney/client relationship is the fiduciary relationship **"...of the highest character."** *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, (1971) 6 Cal. 3d 176, 189. A fiduciary relationship requires the attorney to fully disclose to the client all facts which materially effect the client's rights and interests. *Supra* at 188-189. CGS violated its fiduciary obligations to its clients by unilaterally increasing its billing rates without any notice to the Debtors.

CGS cannot stand in a better position then what it stated in its monthly billing statements to the Debtors on which the Debtors relied. CGS has violated California case law, California Rules of Professional Conduct, California Business and Professions Code and the various California State Bar ethics opinions.

The contract between CGS and the Debtors and the monthly billing statements for almost 5 years through August, 2005 should be the evidence of the attorneys services. See *Vella v. Hudgins* (1984) 151 Cal.App.3d 515, 521.

## CGS IS NOT ENTITLED TO ANY FEE ENHANCEMENT

It is irrelevant that a Bankruptcy Court may allow readjusted billing rates because CGS has unclean hands in regard to its conduct to its clients, the Debtors, which is totally uncontroverted. Furthermore, CGS is bound by the terms of the contract it prepared. CGS does not dispute that they violated the aforementioned California case law, *Severson & Werson*, California Rules of Professional Conduct, California Business and Professions Code and California State Bar opinions as well as the fiduciary duty that CGS had to its clients. CGS cannot be allowed any fee enhancement because it did not live up to the terms of the contract, violated ethical, legal and fiduciary duties to the client and has unclean hands.

CGS has obtained the benefit of the bargain that it struck with the Debtors, which was the billing rate that CGS itself set. Now CGS wants to alter that contract because they want more money for average work. CGS cannot stand in a better position after violating the aforementioned California case law, statutes and opinions, then the bargain it struck with its client. Otherwise, the contract between CGS and

- 8 -

DEBTOR'S REPLY TO SUPPLEMENTAL RESPONSE TO DEBTOR'S FURTHER OBJECTIONS TO FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

Case: 01-55137   Doc# 1058   Filed: 07/10/08   Entered: 07/11/08 13:41:52   Page 8 of 11

the Debtors is utterly meaningless because CGS could do whatever it wants in regard to the billing rates because at the end of the case it could always ask for a fee enhancement.

The Debtors do not need to controvert the market rate evidence because it is immaterial and irrelevant to the analysis at hand. **The rate under which CGS should be compensated is a rate that it bargained for with the Debtors.** CGS never informed the Debtors that at the end of the case it could and would move for a different rate then what it actually billed for the Debtors. There is no conflict of law between Federal Bankruptcy Code Section 328 and requirements of California attorneys' obligations to its clients under *Severson & Werson* case, California Rule of Professional Conduct 3-500, California Business and Professions Code Section 6068(m) and Business and Professions Code Section 6148 and California State Bar rules for billing including Arbitration Advisory 95-02, State Bar Formal Opinion No. 1996-147 and LACBA Opinion No. 479 (1994), as well as the fiduciary duties of CGS to its clients, because CGS consists of California State Bar attorneys who are bound by the aforementioned legal authority in regard to their relationship with their clients, the Debtors.

CGS cannot seriously contend that practice in Federal Bankruptcy Court absolves CGS of any California legal or ethical obligations to their clients.

## FEDERAL CONSIDERATIONS

Debtor's have already cited to *Warrier Drilling and Engineering Co., Inc. v US Bankruptcy Court*, 9 BR 841 (1981 ND Ala), mod. on other grounds 18 BR 684 (1981 ND Ala), still good law, for the holding that **"Appellees had a fiduciary obligation to fully disclose to debtor the possibility that the quoted fee could be increased under §328 (a) or §330. For their failure to do so, Appellee's compensation must be limited to the hourly fees."** *Supra* at 697. The *Warrier* court noted that if there was no fiduciary duty to fully disclose the possibility that the quoted fee could be increased, then the debtor would never be able to place a limit on the compensation sought by the attorney. *Supra* at 697.

Such is the case here where CGS set a limit, its quoted and billed hourly rate, which they now want to modify at the end of the case. Contrary to the situation in *In re Cedic Development Co. v Warnicke* (9th Cir. 2000) 219 F.3d 1115, 1116, CGS did not provide a fee contract that stated the total fee could

- 9 -
DEBTOR'S REPLY TO SUPPLEMENTAL RESPONSE TO DEBTOR'S FURTHER OBJECTIONS TO FINAL
APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

Case: 01-55137    Doc# 1058    Filed: 07/10/08    Entered: 07/11/08 13:41:52    Page 9 of 11

be adjusted upwards based on ten enumerated factors.

## NO LODESTAR WARRANTED

CGS is not entitled to a Lodestar enhancement which in any event doesn't increase the hourly rate or alter the underlying rate. CGS would still be bound the underlying agreed upon rate. A Lodestar only applies, for instance, for special work which brings funds into the estate.

## CONCLUSION

CGS has done nothing more then an average job for the Debtors, certainly not an excellent job. The Court itself has previously pointed out the waste of time, effort and money by CGS in regard to the substantive consolidation issue, problems with the plan of reorganization expenses, and duplicative court appearances because the job wasn't done right the first time. These considerable problems hardly qualify CGS to claim that they did an excellent job.

CGS did not ever tell or alert the Debtors that they were going to apply for an increased billing rate at the end of this case. The issue is therefore not reduction of attorney hours billed but the unethical and improper increase in billing rate by CGS in violation of the previously mentioned California statues, standards, opinions and case law.

The fact of the matter is CGS is seeking greater compensation then what it actually billed to Debtors, and upon which the Debtors relied, only for doing the average work that they were engaged to provide. The Court itself has noted problems with the work performed by CGS and they only obtained an average result not an excellent result.

**CGS is only entitled to the benefit of the bargain it struck with the Debtors, which is the billing rate that they actually supplied to the Debtors.**

Dated: July 10, 2008          WILLIAMS, PINELLI & CULLEN

By: */s/ Edward A. Cullen*
EDWARD F. CULLEN
Attorneys for Debtors
SILICON VALLEY TELECOM
EXCHANGE, LLC

- 10 -
DEBTOR'S REPLY TO SUPPLEMENTAL RESPONSE TO DEBTOR'S FURTHER OBJECTIONS TO FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

Case: 01-55137    Doc# 1058    Filed: 07/10/08    Entered: 07/11/08 13:41:52    Page 10 of 11

# In re SILICON VALLEY TELECOM EXCHANGE, LLC
## Case No: 01-55137-ASW -- Chapter 11
## PROOF OF SERVICE

I am employed in the County of Santa Clara, State of California. I am over the age of eighteen years and not a party to the within action.. My business address is 110 N. Third Street, San Jose, CA 95112.

On the date set forth below, I served the following documents:

**DEBTOR'S REPLY TO SUPPLEMENTAL RESPONSE TO DEBTOR'S FURTHER OBJECTIONS TO FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES**

on the interested parties to said action by the following means:

____ **(BY MAIL)** By placing a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, for collection and mailing on that date following ordinary business practices, in the United States Mail as the office of Williams, Pinelli & Cullen, San Jose, CA, addressed as shown below. I am readily f familiar with this businesses's practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and in the ordinary course of business, correspondence will be deposited with the U.S. Postal Service the same day it was placed for collection and processing.

____ **(BY FACSIMILE TRANSMISSION)** I caused such documents to be delivered by facsimile transmission this date to the offices of the addressee(s), to the fax number noted herein.

__X__ **(BY HAND DELIVERY)** I caused such envelope(s) to be delivered by hand this date to the offices of the addressee(s).

____ **(BY OVERNIGHT DELIVERY)** I caused such envelope(s) to be delivered to an overnight delivery carrier with delivery fees provided for, addressed to the person(s) on whom it is to be served.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 10, 2008 at San Jose, California.

_____
BRENNA PREVOST

**NAME(S) AND ADDRESSES OR FAX NUMBER(S) OF EACH PARTY SERVED:**

Scott L. Goodsell
Marc L. Pinckney
CAMPEAU, GOODSELL, SMITH, A Law Corporation
38 West Santa Clara Street
San Jose, CA 95113
(408)295-9555- Telephone
(408) 295-6606- Facsimile
**Attorneys for
REORGANIZED DEBTOR**