1  CAMPEAU GOODSELL SMITH
   A Law Corporation
2  SCOTT L. GOODSELL, SBN 122223
   WILLIAM J. HEALY, SBN 146158
3  440 N. First Street, Suite 100
   San Jose, California 95112
4  (408) 295-9555
5  Attorneys for Creditor Campeau Goodsell Smith

6  McGRANE GREENFIELD LLP
7  MARCIA E. GERSTON, SBN
   40 South Market Str., #700
8  San Jose, CA 95113
   (408) 995-5600
9  Attorneys for Creditor David Tilem

10 LAW OFFICES OF MARC L. PINCKNEY
11 MARC L. PINCKNEY, SBN 127004
   4660 La Jolla Village Drive
12 Fifth Floor, PMB #50077
   San Diego, CA 92122
13 (408) 857-0880
14 Attorneys for Reorganized Debtor

15
               UNITED STATES BANKRUPTCY COURT
16
             FOR THE NORTHERN DISTRICT OF CALIFORNIA
17

18 In re:                          )   Case No. 01-55137-wsj
19                                  )
   SILICON VALLEY TELECOM           )   CHAPTER 11
20     EXCHANGE, LLC,               )
                                    )   Date:   April 29, 2011
21                                  )   Time:      9:30 a.m.
                        Debtor.     )   Court:  Hon. Arthur S. Weissbrodt
22 _____ )           280 S. First Street, Court #3022
23                                              San Jose, CA  95112

24                     **JOINT PRETRIAL STATEMENT**

25
            Creditors Campeau Goodsell Smith ("CGS") and the Law Offices of David Tilem
26
   ("Tilem"), and reorganized debtor Silicon Valley Telecom Exchange LLC ("SVTX") hereby
27
   submit their joint pretrial statement, and respectfully represent as follows:
28

# UNDISPUTED FACTS

1.      After hearing before this Court on August 24, 2007, debtor Silicon Valley Telecom Exchange LLC (SVTX), joined by related entities Silicon Valley Telecom & Internet Exchange LLC (SVTIX) and Rubio & Associates (RA) (collectively Plan Proponents) confirmed SVTX's Third Amended Chapter 11 Reorganization Plan ("Plan"). Said Plan provides for the following distributions: (i) the STVX Effective Date Payment to be paid to Class 3 unsecured creditors, and (ii) any monies received on SVTX's claim filed in Enron's Chapter 11 case, which are to be paid to Class 3 unsecured creditors, and (iii) quarterly pro rata payments of "80% of the net proceeds of Debtor's on-going operations," and (iv) any net preference recoveries.

2.      Shortly after Confirmation, SVTX distributed the SVTX Effective Date Payment (distribution item (i)). Insofar as SVTX was determined to be solvent, and creditors are being paid in full with interest under its confirmed Plan, no avoidance actions were filed in this case and there will be no preference recoveries (distribution item (iv)). Therefore, the only distribution items presently at issue are items (ii) and (iii).

## Enron Distributions

3.      The item (ii) Enron monies were earmarked under the Plan for SVTX creditors and an initial distribution of Enron monies-on-hand in the amount of $192,302.74 was properly made in/about September 2007. CGS/Tilem believe that SVTX has received additional Enron monies and are unaware if those additional monies were distributed to creditors.

## 80% Quarterly Distributions (Balance Sheet based)

4.      The Plan provides for on-going quarterly payments to creditors to be made within ten (10) days after January 1, April 1, June 1 [sic], and October 1, until creditors are paid in full. The quarterly payments consist "of a pro rata distribution of 80% of the net proceeds of Debtor's on-going operations." CGS and Tilem contend that "net proceeds" means "reported

SVTX cash basis profits" from SVTX/SVTIX income statements, while SVTX contends that "net proceeds" means "Balance Sheet cash balance" from SVTX/SVTIX balance sheet statements.

       5.     Since the commencement of quarterly distributions, SVTX and SVTIX has made the following distributions with respect to item (iii) quarterly payments:

       (a)     for the calendar quarter ending December 2007, SVTX reported a Balance Sheet cash balance of $161,597.18, and SVTIX reported a Balance Sheet cash balance of $41,664.05.  If SVTX and SVTIX had distributed 80% of those sums, SVTX and SVTIX would have paid $129,277.74 and $33,331.24 to creditors/CGS.  Instead, SVTX paid nothing to creditors/CGS.

       (b)     In February 2008, SVTX paid $63,550.00 (check dated 2/15/08) and SVTIX paid $23,718.00 (check dated 2/15/08) to CGS.

       (c)     for the calendar quarter ending March 2008, SVTX reported a Balance Sheet cash balance of $40,017.90, and SVTIX reported a Balance Sheet cash balance of $85,072.39.  If SVTX and SVTIX had distributed 80% of those sums, SVTX and SVTIX would have paid $32,014.32 and $68,057.91 to creditors/CGS.  Instead, SVTX paid nothing to creditors/CGS.

       (d)     for the calendar quarter ending June 2008, SVTX reported a Balance Sheet cash balance of $62,347.51, and SVTIX reported a Balance Sheet cash balance of $25,387.66.  If SVTX and SVTIX had distributed 80% of those sums, SVTX and SVTIX would have paid $49,878.00 and $20,310.13 to creditors/CGS.  Instead, SVTX paid nothing to creditors/CGS.

       (e)     for the calendar quarter ending September 2008, SVTX reported a Balance Sheet cash balance of $82,255.87, and SVTIX reported a Balance Sheet cash

balance of $43,429.54.  If SVTX and SVTIX had distributed 80% of those sums, SVTX and SVTIX would have paid $65,804.70 and $34,743.63 to creditors/CGS.  Instead, SVTX paid nothing to creditors/CGS.

(f)     for the calendar quarter ending December 2008, SVTX reported a Balance Sheet cash balance of ($48,433.90), and SVTIX reported a Balance Sheet cash balance of ($113,852.82) -- after deducting four checks dated 12/28/08 - 12/30/08 and written to CGS consisting of SVTX checks for $15,000.00 and $34,000.00, and SVTIX checks for $85,000.00 and $85,000.00.

(g)     for the calendar quarter ending March 2009, SVTX reported a Balance Sheet cash balance of $98,195.83, and SVTIX reported a Balance Sheet cash balance of $45,296.57.  If SVTX and SVTIX had distributed 80% of those sums, SVTX and SVTIX would have paid $78,556.66 and $36,237.26 to creditors/CGS.  Instead, SVTX paid nothing to creditors/CGS.

(h)     for the calendar quarter ending June 2009, SVTX reported a Balance Sheet cash balance of $32,223.79, and SVTIX reported a Balance Sheet cash balance of $88,696.96.  If SVTX and SVTIX had distributed 80% of those sums, SVTX and SVTIX would have paid $25,779.03 and $70,957.57 to creditors/ CGS.  Instead, SVTIX paid $50,000.00 (check dated 7/14/09) to CGS.

(i)     for the calendar quarter ending September 2009, SVTX reported a Balance Sheet cash balance of $96,770.48, and SVTIX reported a Balance Sheet cash balance of $13,476.00.  If SVTX and SVTIX had distributed 80% of those sums, SVTX and SVTIX would have paid $77,416.38 and $10,780.80 to creditors/CGS.  After CGS filed its motion to compel payments or receiver/trustee, SVTIX paid $19,500.00 (check dated 10/30/09) to CGS.

1

2

3

4

5

6

(j)     for the calendar quarter ending December 2009, SVTX reported a Balance
        Sheet cash balance of $79,318.49, and SVTIX reported a Balance Sheet cash
        balance of ($46,324.24) -- after deducting three checks dated 12/29/09 -
        12/30/09 and written to CGS consisting of an SVTX check for $58,828.76 and
        SVTIX checks for $109,167.03 and $30,163.27.

7

8

9

10

11

12

13

14

(k)     for the calendar quarter ending March 2010, SVTX reported a Balance Sheet
        cash balance of $17,167.26, and SVTIX reported a Balance Sheet cash balance
        of $196,815.96.  If SVTX and SVTIX had distributed 80% of those sums,
        SVTX and SVTIX would have paid $13,733.81 and $157,452.76 to
        creditors/CGS.  Instead, SVTIX paid $135,810.00 (check dated 4/07/10) to
        CGS.  Subsequently, after objections raised by CGS and Tilem, SVTX paid an
        additional $23,106.67 (check dated 5/19/10) to CGS.

15

16

17

18

19

20

21

(l)     for the calendar quarter ending June 2010, SVTX reported a Balance Sheet
        cash balance of $596.14, and SVTIX reported a Balance Sheet cash balance of
        $15,996.43.  If SVTX and SVTIX had distributed 80% of those sums, SVTX
        and SVTIX would have paid $476.91 and $12,797.14 to creditors/CGS.
        SVTX paid $476.91 (check dated 7/08/10) and SVTIX paid $12,797.14 (check
        dated 7/8/10) to CGS.

22

23

24

25

26

27

(m)     for the calendar quarter ending September 2010, SVTX reported a Balance
        Sheet cash balance of $4,240.01, and SVTIX reported a Balance Sheet cash
        balance of ($2,856.87).  If SVTX and SVTIX had distributed 80% of those
        sums, SVTX and SVTIX would have paid $3,392.01 and $ -0- to
        creditors/CGS.  SVTX paid $1,106.51 (check dated 10/10/10) to CGS.

28

(n)     for the calendar quarter ending December 2010, SVTX reported a Balance
Sheet cash balance of $6,582.52, and SVTIX reported a Balance Sheet cash
balance of $12,504.70.  If SVTX and SVTIX had distributed 80% of those
sums, SVTX and SVTIX would have paid $5,266.02 and $10,003.76 to
creditors/CGS.  SVTX paid $5,266.02 (check dated 1/10/11) and SVTIX paid
$10,003.76 (check dated 1/10/11) to CGS.

(o)     for the calendar quarter ending March 2011, SVTX reported a Balance Sheet
cash balance of $2,035.50 and SVTIX reported a Balance Sheet cash balance
of $13,517.93.  If SVTX and SVTIX had distributed 80% of those sums,
SVTX and SVTIX would have paid $1,628.40 and $10,814.34 to
creditors/CGS.  SVTX paid $1,628.40 (check dated 4/2/11) and SVTIX paid
$10,806.34 (check dated 4/2/11) to CGS.

**20% Building Reserve Account**

6.      Until April 1, 2010, SVTX did not separately establish nor account for the
20% Reserve Fund anticipated in the confirmed Plan.  SVTX expended monies for building
repairs, maintenance and improvements from its general bank accounts.  Creditors CGS and
Tilem are in disagreement with SVTX concerning the total sum expended from the Confirmation
Date through the present, with creditors contending that such sum exceeds $1,000,000.  It is not
disputed that prior to the May 2010 payment methodology agreement, SVTX expended funds
without reference to the 20% Reserve Fund balance available to SVTX.  It is not disputed that at
no time prior to March 31, 2010, did CGS ever discuss with SVTX that SVTX should have a
separate bank account for the 20% Reserve Account.

**Rubio Personal Compensation**

7. From Confirmation to the present date, Fred Rubio and Karen Rubios have received at least $525,000.00 in personal salary compensation, not including additional health benefits. In addition, Fred/Karen Rubio's sons have received compensation from SVTX/SVTIX.

**CGS Payments**

8. From October 2001 (petition filing) to present, SVTX, SVTIX and RA have paid CGS the sums of $821,110.45, $640,585.02 and $30,000.00, respectively, for a total of $1,491.695.47. CGS contends that the total fees/costs it is owed by SVTX, SVTIX and RA as of July 8, 2010, including interest, is $436,043.59. Since the calendar quarter ending December 31, 2007 and through the calendar quarter ending June 30, 2010, SVTX and SVTIX have paid CGS the sums of $194,963.34 and $551,155.44, respectively.

## DISPUTED FACTS

9. CGS/Tilem contend that the particular purpose of the 80/20 split in determining creditor distribution payments (as opposed to 100% creditor receipt of all "net proceeds") was to allow SVTX to accumulate a "sinking fund" for significant building repairs and/or building improvements. They contend that their position is supported by the Plan drafting process and by representations at the Plan Confirmation hearing that the phrase "net proceeds" means "net profits" and that the purpose of the 80/20 split is thwarted by using the "Balance Sheet cash balance" for purposes of determining payments to unsecured creditors.

10. SVTX contends that the "Balance Sheet cash balance" reflects the cash balance after subtracting all checks written during the quarter, including checks that have been written but not yet submitted to SVTX/SVTIX's bank for payment. SVTX contends that the "reported SVTX cash basis profits" differs from the "Balance Sheet cash balance" determination of "net proceeds" in that "reported SVTX cash basis profits" does not subtract checks written by

SVTX/SVTIX that have not been presented to SVTX/SVTIX's bank for payment even though the liability for payment on the check exists. SVTX contends that it is a Generally Accepted Accounting Principle (GAAP) that cash balances are based on "Balance Sheet cash balances."

11. SVTX contends that one of the events that precipitated the filing of SVTX's bankruptcy petition was SVTX's inability to pay expenses as they were incurred and that one such pre-petition expense was for the repair of a broken underground water pipe that cost in excess of $124,000 to repair. SVTX contends that the purpose of distributing only 80% of the net proceeds to creditors was to enable SVTX/SVTIX to retain 20% of the net proceeds as a "reserve account" so that SVTX/SVTIX would have cash on hand to pay unplanned repairs whose cost exceeded SVTX/SVTIX's ability to pay from monthly revenues.

**80% Quarterly Distributions (Net Profits based)**

12. As set forth above, CGS and Tilem contend that "net proceeds" means "reported SVTX cash basis profits" from SVTX/SVTIX income statements rather than "Balance Sheet cash balance" from SVTX/SVTIX balance sheet statements. Restating the foregoing analysis based on "cash profits" would calculate as follows:

(a) for the calendar quarter ending December 2007, SVTX reported Net Income of $236,448.34, and SVTIX reported Net Income of $23,718.25. If SVTX and SVTIX had distributed 80% of those sums, SVTX and SVTIX would have paid $189,158.67 and $18,974.60 to creditors/CGS.

(b) In February 2008, SVTX paid $63,550.00 (check dated 2/19/08) and SVTIX paid $23,718.00 (check dated 2/19/08) to CGS.

(c) for the calendar quarter ending March 2008, SVTX reported Net Income of ($26,183.60), and SVTIX reported Net Income of $39,648.86. If SVTX and SVTIX had distributed 80% of those sums, SVTX and SVTIX would have

paid $ -0- and $31,719.09 to creditors/CGS.  Instead, SVTX paid nothing to creditors/CGS.

(d)     for the calendar quarter ending June 2008, SVTX reported Net Income of $112,773.20, and SVTIX reported Net Income of $16,647.65.  If SVTX and SVTIX had distributed 80% of those sums, SVTX and SVTIX would have paid $90,218.56 and $13,318.12 to creditors/CGS.  Instead, SVTX paid nothing to creditors/CGS.

(e)     for the calendar quarter ending September 2008, SVTX reported Net Income of $176,941.72, and SVTIX reported Net Income of $117,832.92. If SVTX and SVTIX had distributed 80% of those sums, SVTX and SVTIX would have paid $141,553.37 and $94,266.34 to creditors/CGS.  Instead, SVTX paid nothing to creditors/CGS.

(f)     for the calendar quarter ending December 2008, SVTX reported Net Income of ($230,633.12), and SVTIX reported Net Income of ($200,436.31) -- after deducting four checks dated 12/28/08 -12/30/08 and written to CGS consisting of SVTX checks for $15,000.00 (delivered 1/15/09) and $34,000.00 (delivered 1/29/09), and SVTIX checks for $85,000.00 (delivered 1/15/09), and $85,000.00 (delivered 1/27/09) to CGS.

(g)     for the calendar quarter ending March 2009, SVTX reported Net Income of $149,813.82, and SVTIX reported Net Income of $153,651.37.  If SVTX and SVTIX had distributed 80% of those sums, SVTX and SVTIX would have paid $119,851.05 and $122,921.09 to creditors/CGS.  Instead, SVTX paid nothing to creditors/CGS.

9

(h)     for the calendar quarter ending June 2009, SVTX reported Net Income of $20,671.85, and SVTIX reported Net Income of $89,272.39.  If SVTX and SVTIX had distributed 80% of those sums, SVTX and SVTIX would have paid $16,537.48 and $71,417.91 to creditors/CGS.  Instead, SVTX paid $50,000.00 (check dated 7/05/09) to CGS.

(i)     for the calendar quarter ending September 2009, SVTX reported Net Income of $77,381.63, and SVTIX reported Net Income of ($36,978.60).  If SVTX and SVTIX had distributed 80% of those sums, SVTX and SVTIX would have paid $61,907.70 and $ -0- to creditors/CGS.  Instead, but only after CGS filed its motion to compel payments or receiver/trustee, SVTX paid $19,500.00 (check dated 10/30/09) to CGS.

(j)     for the calendar quarter ending December 2009, SVTX reported Net Income of ($43,724.29), and SVTIX reported Net Income of $63,901.92. -- after included deduction of three checks dated 12/29/09 -12/30/09 and written to CGS consisting of an SVTX check for $58,828.76 (delivered 1/12/10), and SVTIX checks for $109,167.03 (delivered 1/12/09), and $30,163.27 (delivered 1/20/10) to CGS.

(k)     for the calendar quarter ending March 2010, SVTX reported Net Income of ($42,234.42) and SVTIX reported Net Income of $245,986.61.  If SVTX and SVTIX had distributed 80% of those sums, SVTX and SVTIX would have paid $ -0- and $196,789.28 to creditors/CGS.  Instead, SVTX paid $135,810.00 (check dated 4/08/10) to CGS.  Subsequently, after objections raised by CGS and Tilem, SVTX paid an additional $23,106.67 (check dated 5/19/10) to CGS.

(l)     for the calendar quarter ending June 2010, SVTX reported Net Income of $52,654.89, and SVTIX reported Net Income of ($153,549.29). If SVTX and SVTIX had distributed 80% of those sums, SVTX and SVTIX would have paid $42,123.91 and $ -0- to creditors/CGS. SVTX paid $13,274.05 (check dated 7/08/10) to CGS. However, CGS and Tilem advised SVTX that at least $21,519.21 was still due and owing, based on SVTX mis-utilization of general purpose funds for 20% Reserve Account building improvements and repairs, but SVTX has not paid any additional sum.

(m)     for the calendar quarter ending September 2010, SVTX reported Net Income of ($16,256.13), and SVTIX reported Net Income of ($19,555.51) (amounts net of non-cash items). If SVTX and SVTIX had distributed 80% of those sums, SVTX and SVTIX would have paid nothing to creditors/CGS. SVTX paid $1,106.51 (check dated 10/10/10) to CGS.

(n)     for the calendar quarter ending December 2010, SVTX reported Net Income of $2,342.51, and SVTIX reported Net Income of $13,806.32 (amounts net of non-cash items). If SVTX and SVTIX had distributed 80% of those sums, SVTX and SVTIX would have paid $1,874.01 and $11,045.06 to creditors/CGS. SVTX paid $5,266.02 (check dated 1/10/11) and SVTIX paid $10,003.76 (check dated 1/10/11) to CGS.

(o)     for the calendar quarter ending March 2011, SVTX reported Net Income of ($4,503.12), and SVTIX reported Net Income of ($836.30) (amounts net of non-cash items). If SVTX and SVTIX had distributed 80% of those sums, SVTX and SVTIX would have paid nothing to creditors/CGS. SVTX paid

11

$1,628.40 (check dated 4/2/11) and SVTIX paid $10,806.34 (check dated 4/2/11) to CGS.

13.    CGS/Tilem contend that, for the calendar quarter ending December 2008, when SVTX reported a Balance Sheet cash balance of ($48,433.90), and SVTIX reported a Balance Sheet cash balance of ($113,852.82) -- after deducting four checks dated 12/28/08 - 12/30/08 and written to CGS consisting of SVTX checks for $15,000.00 (delivered 1/15/09) and $34,000.00 (delivered 1/29/09), and SVTIX checks for $85,000.00 (delivered 1/15/09), and $85,000.00 (delivered 1/27/09) to CGS -- that the payment checks were written for more funds than SVTX and SVTIX actually had available to them at the end of December 2008 and were therefore not delivered until mid- or late-January 2009 in order to utilize January 2009 rents to cover those checks written.  CGS/Tilem contend that SVTX' primary purpose in writing such checks was not to comply with SVTX' confirmed Plan obligations but rather to minimize Rubio personal taxes.

14.    CGS/Tilem contend that, for the calendar quarter ending December 2009, when SVTX reported a Balance Sheet cash balance of $79,318.49, and SVTIX reported a Balance Sheet cash balance of ($46,324.24) -- after deducting three checks dated 12/29/08 - 12/30/08 and written to CGS consisting of an SVTX check for $58,828.76 (delivered 1/12/10), and SVTIX checks for $109,167.03 (delivered 1/12/09), and $30,163.27 (delivered 1/20/10) to CGS -- that the payment checks were written for more funds than SVTX and SVTIX actually had available to them at the end of December 2009 and were therefore not delivered until mid- or late-January 2010 in order to utilize January 2010 rents to cover those checks written. CGS/Tilem contend that SVTX' primary purpose in writing such checks was not to comply with SVTX' confirmed Plan obligations but rather to minimize Rubio personal taxes.

12

15.     CGS/Tilem contend that, for the calendar quarter ending June 2010, when SVTX paid $13,274.05 (check dated 7/08/10) to CGS, CGS/Tilem advised SVTX that at least $21,519.21 was still due and owing, based on SVTX mis-utilization of general purpose funds for 20% Reserve Account building improvements/repairs, but SVTX has not paid any additional sum.

16.     SVTX contends that since the commencement of quarterly distributions of 80% of "net profits" beginning with the quarter ending December 2007 through June 30, 2010 (including the 80% distribution on the "Balance Sheet cash balance" made in the first 10 days of July 2010), SVTX distributed to CGS the entire "Balance Sheet cash balance" except for $119.23.  In other words, after subtracting all expenses, including expenses paid by check which have not been presented to SVTX's bank for payment, and the quarterly distribution for the quarter ending June 30, 2010, SVTX had a remaining balance sheet cash balance of $119.23.

17.     SVTX contends that since the commencement of quarterly distributions of 80% of the "net proceeds" beginning with the quarter ending December 2007 through June 30, 2010 (including the 80% distribution of the "Balance Sheet cash balance" made in the first 10 days of July 2010), SVTIX distributed to CGS the entire "Balance Sheet cash balance" except for $11,135.58.

18.     SVTX contends that SVTX and SVTIX did not make any quarterly distribution to CGS for the calendar quarter ending December 31, 2007 because as of the date for distribution, CGS had no unpaid, court approved, fee applications.  CGS/Tilem contend that the lack of any CGS-approved fee application did not excuse SVTX performance (either payment to creditors or sequestering funds) of its obligations under the terms of the confirmed Plan.

19.     SVTX contends that, for the quarterly distribution for the calendar quarter ending March 31, 2010, a dispute arose between SVTX and CGS with respect to calculating the

13

amount of the quarterly distribution. Specifically, SVTX maintained that the $57,120.77 prepaid rent paid by tenant Verio, Inc. for the rental month of April 2010 that was received in March 2010 was not "net proceeds" and should not be included in the calculation of the distribution amounts to creditors. CGS/Tilem contend that, consistent with SVTX' assertion that its Plan payment obligation was premised upon the "Balance Sheet cash balance" – and the prepaid Verio rent being part of that total cash balance – SVTX was not permitted to reduce the reported "Balance Sheet cash balance" to exclude the Verio pre-paid rents. SVTX contends that the two payments made to CGS for the quarterly distribution for the calendar quarter ending March 31, 2010 totaling $158,916.67 is the amount CGS agreed was the amount owing for the quarterly distribution. CGS/Tilem contend that CGS accepted a calculated payment premised upon the "Balance Sheet cash balance" but excluding the prepaid Verio rent being part of that total cash balance as a compromise of that issue for that quarterly payment only.

   20. SVTX contends that after SVTX and SVTIX made the quarterly distribution for the calendar quarter ending June 30, 2010, CGS questioned SVTX's $6,000.00 and SVTIX's $6,000.00 payments to the California Franchise Tax Board, which Plan Proponents explained were Gross Receipts taxes SVTX and SVTX owed the State of California, to CGS's satisfaction. SVTX contends that CGS also claimed that SVTX was manipulating rent since SVTX received a $57,117.77 rent payment from a tenant Verio, Inc., on June 21, 2010 and SVTX refunded the rent payment on June 30, 2010. SVTX contends that Plan Proponents explained to CGS that Verio, Inc.'s lease terminated June 30, 2010 and that Verio, Inc. mistakenly paid rent for July 2010, for which SVTX refunded the mistaken payment. SVTX contends that after the Verio, Inc. rent refund was explained to CGS, CGS wanted confirmation that SVTX had in fact sent Verio, Inc. the refund check. SVTX contends that SVTX confirmed the check had been sent to Verio, Inc. and SVTX obtained confirmation from Verio, Inc. that Verio, Inc. had in fact

14

received the refund check. CGS/Tilem contend that, despite the foregoing assertions, SVTX continues to claim that Verio owes (and has not paid) rent to SVTX for June 2009, July 2009, August 2009 and later months.

21. SVTX contends that the Income and Expense Graph exhibit offered by SVTX is an accurate representation of the combined financial information for SVTX and SVTIX for the years represented. CGS/Tilem dispute this assertion and contend that the exhibit materially misrepresents a correct accounting for SVTX/SVTIX financial data consistent with SVTX obligations under the confirmed Plan.

22. SVTX contends that the Income and Expense Report exhibit offered by SVTX is an accurate represention of the combined financial information for SVTX and SVTIX for the years represented. CGS/Tilem dispute this assertion and contend that the exhibit materially misrepresents a correct accounting for SVTX/SVTIX financial data consistent with SVTX obligations under the confirmed Plan.

23. SVTX contends that the combined SVTX and SVTIX *total incomes* for 2007, 2008, 2009, and the partial year 2010 through 6/30/2010 is $1,923,979.40, $2,342,559.40, $2,952,675.74, and $1,383,947.72 for each year, respectively.

24. SVTX contends that the combined SVTX and SVTIX *gross profit* for 2007, 2008, 2009, and the partial year 2010 through 6/30/2010 is $826,947.46, $934,483.83, $1,285,414.48, and $490,177.12 for each year, respectively. CGS/Tilem dispute this assertion and contend that the exhibit materially misrepresents a correct accounting for SVTX/SVTIX financial data consistent with SVTX obligations under the confirmed Plan.

25. SVTX contends that the combined SVTX and SVTIX *net ordinary income* for 2007, 2008, 2009, and the partial year 2010 through 6/30/2010 is $309,626.54, $592,637.97, $991,603.15, and $323,661.27, for each year, respectively. CGS/Tilem dispute this assertion and

contend that the exhibit materially misrepresents a correct accounting for SVTX/SVTIX financial data consistent with SVTX obligations under the confirmed Plan.

26. SVTX contends that, prior to September 1, 2007, CGS never advised SVTX that quarterly distributions pursuant to SVTX's Plan of Reorganization should be calculated based on SVTX and SVTIX's quarterly Profit & Loss statements. CGS/Tilem dispute this contention.

27. SVTX contends that, prior to March 31, 2010, CGS never advised SVTX that quarterly distributions pursuant to SVTX's Plan of Reorganization should be calculated based on SVTX and SVTIX's quarterly Profit & Loss statements. CGS/Tilem dispute this contention.

28. SVTX contends that, at no time prior to March 31, 2010, did CGS ever discuss with SVTX how to determine "net proceeds" for calculating quarterly distributions pursuant to SVTX's Plan of Reorganization. CGS/Tilem dispute this contention.

29. SVTX contends that, at no time prior to March 31, 2010, did CGS ever discuss with SVTX which financial report SVTX should use to determine "net proceeds" for calculating quarterly distributions pursuant to SVTX's Plan of Reorganization. CGS/Tilem dispute this contention.

30. SVTX contends that, CGS had no discussions with SVTX regarding what SVTX needed to do to perform its obligations under SVTX's Plan of Reorganization. CGS/Tilem dispute this contention.

31. SVTX contends that, at no time prior to March 31, 2010, did CGS ever discuss with SVTX that SVTX should have a separate accounting line item for the 20% Reserve Account. CGS/Tilem dispute this contention.

16

32. SVTX contends that SVTX was under no obligation to retain funds in a 20% Reserve Account and could distribute all funds to CGS/creditors, at SVTX's sole discretion. CGS/Tilem dispute this contention.

33. SVTX contends that CGS/Tilem have no facts to support the contention that SVTX has not distributed all funds to creditors that SVTX has received on account of its claim in Enron's bankruptcy case. CGS/Tilem dispute this contention.

34. CGS/Tilem contend that the Plan anticipated that all creditors would be paid in full within three years from Confirmation.

**Motion to Compel Payments**

35. In October 2009, CGS filed a motion to compel SVTX to comply with its confirmed Chapter 11 reorganization plan or, alternatively, for appointment of a trustee or receiver. CGS' motion was subsequently joined by Tilem, a creditor of SVTX's creditor Corporate Builders, Inc., and by Randall Lamb Associates.

36. In May 2010, creditors CGS and Tilem entered into a "payment methodology" agreement with reorganized debtor SVTX in an attempt to clarify SVTX' compliance obligations with respect to its Confirmed Plan, which agreement was subsequently rendered as an Order of this Court.

37. Based on SVTX's immediate subsequent distribution for the calendar quarter ending June 2010, CGS/Tilem assert that SVTX is not in compliance with the payment methodology agreement. Among other things, CGS/Tilem contend that SVTX owes at least an additional $21,519.21, based on its mis-utilization of general purpose funds for 20% Reserve Account building improvements and repairs. SVTX contends that $12,500.00 in identified charges were not for improvements and as such payment for those expenses is not limited to the balance held in SVTX's 20% Reserve Account. SVTX contends that of $53,762.20 in identified

charges only the $22,250.00 cabinet charge and $9,904.00 PME Electric charges were for construction of improvements, with the remaining charges for repairs or maintenance. SVTX contends that $53,762.20 in identified charges were incurred prior to SVTX and CGS/Tilem reaching the "payment methodology agreement"or the Court Order approving same.

**20% Reserve Account**

38.     SVTX contends that SVTX' 20% Reserve Account balance as of April 1, 2010 was $39,363.19. CGS/Tilem dispute this contention because that balance fails to reflect the cumulative effect of SVTX over-spending of such funds from all prior periods, which SVTX had previously deducted from General Account (i.e. "Creditor") funds.

39.     SVTX contends that the quarterly maintenance contracts for maintaining SVTIX's data center equipment is not an amount to be deducted from the 20% Reserve Account. SVTX contends that the Chase Card reimbursements paid on May 19, 2010, for $2,590.90 and $2,262.25 are for payment to Cal-Gen for a quarterly generator maintenance contract and JT Packard for a UPS quarterly maintenance contract, respectively. CGS/Tilem dispute this characterization.

40.     SVTX contends that the Plan and/or Court Order setting for a methodology for calculating quarterly distributions does not in any way limit amounts SVTX and/or SVTIX may spend for maintenance and repairs. CGS/Tilem dispute this characterization.

41.     SVTX contends that the Plan and/or Court Order setting forth a methodology for calculating quarterly distributions permit SVTX and/or SVTIX to pay maintenance and/or repair expenses even when the 20% Reserve Account balance is zero or a negative account balance. CGS/Tilem dispute this characterization.

42.     SVTX contends that prior to the July 16, 2010 status conference and as an inducement to enter into the agreement regarding a methodology for calculating quarterly

distributions, CGS and Tilem agreed to dismiss the Motion to Compel if SVTX made the quarterly distribution for the quarter ending June 30, 2010 according to the agreed methodology for calculating quarterly distributions. CGS/Tilem dispute this characterization.

<b>LEGAL ISSUES RAISED</b>

A.      Did Plan Proponents correctly calculate the quarterly distribution for the quarter ending June 30, 2010?

B.      Are SVTX./SVTIX payments for improvements prior to the agreement regarding the methodology for calculating quarterly distributions a breach of the agreement and Order?

C.      If Plan Proponents did not correctly calculate the quarterly distribution for the quarter ending June 30, 2010, what remedies are available to creditors?

D.      Did creditors and CGS waive alleged breaches of the Plan prior to March 31, 2010 as a condition of Plan Proponents entering into the agreement regarding a methodology?

E.      Is SVTX in breach of its obligations under the Confirmed Plan?

F.      If so, what remedies are available to creditors in consequence of SVTX' breach (e.g., money judgment, appointed receiver, case conversion, etc)?

<b><u>DOCUMENTS TO BE OFFERED AS EXHIBITS</u></b>

CGS/Tilem will offer the following Exhibits (other than those to be used for impeachment) all of which have been shown to SVTX or obtained from SVTX:

1.      Third Amended Joint Plan of Reorganization, with Amendment
2.      Disclosure Statement, with Addendum
3.      Order Confirming Joint Plan of Reorganization
4.      Transcript (Confirmation Hearing)
5.      SVTX Quarterly Post-Confirmation Reports (Original and Amended)
6.      SVTX Balance Sheets, P/L Statements, Check Ledgers and Detail
7.      SVTIX Balance Sheets, P/L Statements, Check Ledgers and Detail
8.      SVTX/SVTIX Invoices and Charge Card Statements

SVTX will offer the following Exhibits (other than those to be used for impeachment) all of which have been shown to CGS/Tilem or obtained from CGS/Tilem:

1. Confirmed Plan of Reorganization
2. Order setting a methodology for calculating quarterly distributions
3. Pinckney 7/6/10 email to Goodsell/Gerston with attachments
4. CGS summary of questioned SVTX/SVTIX expenses from 6/30/10 quarter
5. SVTX response to item (4) above
6. PME Electric invoices paid during 6/30/10 quarter
7. Chase Card monthly statement (redacted) for SVTX payment of 5/19/10
8. Goodsell 7/8/10 email
9. SVTX consolidated balance sheet for quarters ending 12/31/07 - 6/30/10
10. Pinckney/Goodsell/Gerston 5/14/10-5/19/10 emails
11. SVTIX consolidated balance sheet for quarters ending 12/31/07 - 6/30/10
12. Spreadsheet titled SVTX and SVTIX Allocation and Payments
13. Transcript (7/16/10 Court Hearing)
14. Income & Expense Report v.1
15. Income & Expense Graph

## **WITNESSES**

CGS/Tilem intend to call the following witnesses (except those to be called for impeachment):

1. Fred Rubio - as below
2. Karen Rubio - as below
3. Scott Goodsell - as below, and Plan provisions interpretation

Plan Proponents intend to call the following witnesses (except those to be called for impeachment):

1. Fred Rubio - will testify regarding SVTX/SVTIX operations, revenue, expenses (repair, maintenance and improvements) and distributions to creditors and CGS
2. Karen Rubio - will testify regarding SVTX/SVTIX bookkeeping, reporting, US Trustee reports and distributions to creditors and CGS
3. P.M. "Mike" England - will testify work performed for SVTX/SVTIX and invoicing for his work
4. Laurie Orlando - will testify regarding spreadsheet entitled SVTX and SVTIX Allocation and Payments, SVTX/SVTIX books and records, including Balance Sheets and P/L Statements, as well as distribution to creditors and payments to CGS
5. Scott Goodsell - will testify regarding CGS claims with respect to SVTX/SVTIX expenditures for repairs and improvements as well as CGS and creditors agreement to withdraw CGS Motion to Compel

```
 1        6.    Marcia Gerston - will testify regarding CGS and creditors agreement to
                withdraw CGS Motion to Compel
 2        7.    Marc Pinckney - will testify regarding CGS and creditors agreement to
                withdraw CGS Motion to Compel
 3

 4

 5   DATED: April 26, 2011            CAMPEAU GOODSELL SMITH

 6
                                      By ____/s/ Scott L. Goodsell_____
 7                                        Scott L. Goodsell
                                          Attorneys for Creditor CGS
 8
     DATED: April 26, 2011            McGRANE GREENFIELD LLP
 9

10                                    By _____/s/ Marcia L. Gerston_____
                                         Marcia L. Gerston
11                                       Attorneys for Creditor Tilem

12
     DATED: April 26, 2011            LAW OFFICES OF MARC PINCKNEY
13

14                                    By _____/s/ Marc L. Pinckney_____
                                         Marc L. Pinckney
15                                       Attorneys for Reorganized Debtor

16

17

18

19

20

21

22

23

24

25

26

27

28
```