GREGORY CHARLES, ESQ., BAR NO. 208583
CAMPEAU GOODSELL SMITH
440 North First Street, Ste. 100
San Jose, California 95112
Telephone: 408.295.9555
Facsimile: 408.852.0233
gcharles@campeaulaw.com

Counsel for Campeau Goodsell Smith

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: SILICON VALLEY TELECOM EXCHANGE, LLC<br><br>DEBTOR. | Case No. 01-55137-wsj<br><br>Chapter 11<br><br>**TRIAL BRIEF ON CREDITOR'S MOTION TO COMPEL DEBTOR TO MAKE PLAN PAYMENTS OR ALTERNATIVELY TO APPOINT TRUSTEE OR RECEIVER**<br><br>Date: April 29, 2011<br>Time: 9:30 a.m.<br>Court: 280 S. First Street, Court #3022<br>       San Jose, CA<br><br>Hon. Arthur S. Weissbrodt |

## I. INTRODUCTION AND SUMMARY OF THE RELIEF SOUGHT

Over many years, the Debtor has demonstrated a complete disregard of its obligations imposed by a confirmed plan of reorganization. In simple terms, the dispute arises from the Debtor's obligation to distribute "80% of the net proceeds of Debtor's on-going operations" on a quarterly basis. Pursuant to this mechanism, the Debtor retains the remaining 20% as a sinking fund for major repairs and capital improvements.

The Debtor, however, contends that it can spend any sum that it desires for any purpose in any given quarter. Thereafter, if monies are left over, it retains 20% of the funds, and the creditors receive 80% on a pro-rata basis. Using this indefensible position, the debtor misappropriated over $1.6 million that would have been paid to the

1 administrative claimant an unsecured creditors. As it stands now, unsecured creditors have received nothing.

On October 26, 2009, creditor CGS filed its instant motion to compel debtor to comply with the plan, or alternatively, for appointment of a trustee or receiver. Since that time, CGS and others endeavored to bring Debtor into compliance with the plan, but it simply refuses to fulfill its obligations. Given the longstanding misappropriation of funds by the Debtor, creditors probably will not be paid in full with interest as mandated by the plan. Payment of principal is at risk. Thus, the instant motion is not a tactical ploy. Rather, it reflects the only remedy that will ensure compliance with the plan. Thus, the Court must appoint either a receiver or trustee (or convert debtor's case to a Chapter 7 proceeding) in order to sell the subject leasehold before it wastes away.

## II. STATEMENT OF FACTS TO BE PRESENTED AT TRIAL

### A. THE PLAN

After a hearing before this Court on August 24, 2007, Debtor Silicon Valley Telecom Exchange LLC (SVTX), joined by related entities Silicon Valley Telecom & Internet Exchange LLC (SVTIX) and Rubio & Associates (RA) (collectively Plan Proponents) confirmed SVTX's Third Amended Chapter 11 Reorganization Plan ("Plan"). The Plan provides for the following distributions: (i) the STVX Effective Date Payment to be paid to Class 3 unsecured creditors, and (ii) any monies received on SVTX's claim filed in Enron's Chapter 11 case, which are to be paid to Class 3 unsecured creditors, and (iii) quarterly *pro rata* payments of "80% of the net proceeds of Debtor's on-going operations," and (iv) any net preference recoveries.

Shortly after Confirmation, SVTX distributed the SVTX Effective Date Payment (distribution item (i)). Insofar as SVTX was determined to be solvent, and creditors are being paid in full with interest under its confirmed Plan, no avoidance actions were filed in this case and there will be no preference recoveries (distribution item (iv)). Therefore, the only distribution items presently at issue are items (ii) and (iii).

Enron Distribution(s)

The item (ii) Enron monies were earmarked under the Plan for SVTX creditors and an initial distribution of Enron monies-on-hand in the amount of $192,302.74 was made in or about September 2007.

### B. FAILURE TO MAKE 80% DISTRIBUTIONS

The Plan provides for on-going quarterly payments to creditors to be made within ten (10) days after January 1, April 1, June 1 [sic], and October 1, until creditors are paid in full. The quarterly payments consist "of a pro rata distribution of 80% of the net proceeds of Debtor's on-going operations."

- CGS and Tilem contend that "net proceeds" mean "reported SVTX cash basis profits" from SVTX/SVTIX income statements.
- SVTX contends that "net proceeds" mean "Balance Sheet cash balance" from SVTX/SVTIX balance sheet statements.

This issue must be resolved by this Court at trial.

Non-compliance with the plan is rampant. For example, the Debtor made only 4 of the 11 scheduled quarterly distributions during three years post confirmation. Distributions include:

(1) Debtor made an initial funds distribution of $63,550 for the calendar quarter ending December 2007;

(2) Debtor made a funds distribution of $219,000 for the calendar quarter ending December 2008;

(3) Debtor made a funds distribution of $198,160 for the calendar quarter ending December 2009; and

(4) Debtor made a funds distribution of $135,810 for the calendar quarter ending March 2010.

In addition, Debtor paid CGS with a check for $50,000 in July 2009 and a check for $19,500 in November 2009. Notably, the Debtor did not calculate any of the foregoing payments based on the "pro rata distribution of 80% of the net proceeds" required by the confirmed plan.

As noted, the 80/20 split regarding creditor distributions (as opposed to 100% creditor receipt of all "net proceeds") allowed SVTX to accumulate a "sinking fund" for significant building repairs and/or building improvements. The plan drafting process and representations at the confirmation hearing that the phrase "net proceeds" means "net profits" demonstrate this fact. The debtor did not create a reserve from the remaining funds. Consequently, it diverted the creditors' funds and undertook substantial building improvements and other projects (perhaps as much as $1,000,000). This direct violation of the plan did not benefit creditors, and the Debtor neither sought nor obtained approval to spend creditors' money.

The Debtor's conversion of creditors' funds has imposed substantial harm. At the August 2007 confirmation hearing, Debtor's counsel predicted that creditors would be paid in full in about 2½ years based on Debtor's then-current revenues. In/about June 2008, when creditor CGS's final fee application was approved, CGS counsel Goodsell estimated that creditors (including CGS) would be paid in full within 3 years from Plan confirmation, and Debtor did not dispute that estimate.

### C. DEBTOR'S USE OF THE CONVERTED FUNDS HAS CAUSED SUBSTANTIAL HARM

Unbeknownst to CGS and other creditors, and contrary to plan provisions, Debtor diverted the creditors' money and undertook a substantial building improvements program. Even though Debtor was well aware of Verio/NTTA's expressed intention to depart the building at the conclusion of their leases, Debtor failed to replace that revenue source.

Since May 2010, Debtor's revenues (and profits) have fallen precipitously with the long-scheduled departure of Verio and NTTA as building tenants – and the concomitant loss of over $50,000/month in net rental profits. Currently, Debtor's (and SVTIX's) combined net monthly profits appear to average about $3,000/month. The Plan-directed interest accrual (est 4%) on Debtor's outstanding creditor obligations (est $1,000,000) is about $3,300/month. There is no reserve for anticipated major building repairs or improvements. The leasehold has a diminishing term and therefore

diminishing value. In sum, creditors are presently in a worse circumstance than they were at the August 2007 plan confirmation date – and precisely so because Debtor willfully failed to meet its obligations under that confirmed Plan.

### D. CREDITORS EFFORTS TO HELP THE DEBTOR.

From at least June 2010, creditors advised Debtor that they would support any effort by Debtor to borrow funds (replacing the paid-off San Jose National Bank loan) to pay off creditor claims or, alternatively, to sell the depreciating leasehold for the same purpose. Debtor declined to pursue either alternative as its management is satisfied drawing "guaranteed payments to partners" monthly salaries totaling $15,000 and perks. In this context, the Debtor and its management enjoy every benefit of the plan while paying nothing to unsecured creditors. Their conduct is contumacious, complete disregard of the plan over many years demonstrates that rehabilitation is impossible. Consequently, a receiver or trustee who respects fiduciary obligations is the only mechanism that will protect the creditors' contractual payment rights.

### III. LEGAL ISSUES TO BE RESOLVED

Given the undisputed violations of the confirmed Plan, the Court is asked by creditors to enforce an appropriate legal remedy. Any remedy that leaves Debtor in control of the business will expose creditors to additional willful non-compliance with the plan and, at this point in time, likely loss of any benefit from the confirmed plan. Rather, this Court must either appoint a receiver or trustee (or convert this case to a Chapter 7 proceeding) in order to give creditors the benefit of their contractual bargain and provide for their possible future recovery of the value of their allowed claims.

The August 31, 2007 Order confirming debtor's reorganization plan is a final judgment under Federal law. Insofar as the Order provides for money payments to creditors, the Order constitutes a money judgment, and Federal Rule of Civil Procedure, Rule 69, provides the mechanism for execution on federal money judgments:

> In General. Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment,

and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. In aid of judgment or execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held.

California law is applicable. "The draftsmen of the rule, rather than design a format for supplementary proceedings – with stages, deadlines, and other forms, powers and limitations specially adapted to the needs of such proceedings – decided (perhaps in the hope that such proceedings would rarely be necessary) to borrow the format employed in the courts of the forum state." *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993). Rule 69(a) "permits judgment creditors to use any execution method consistent with the practice and procedure of the state in which the district court sits." *Peacock v. Thomas*, 516 U.S. 349, 116 S.Ct. 862, 869 n. 7, 133 L.Ed.2d 817 (1996); see also, Cigna *Property and Casualty Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 421 (9th Cir. 1998).

California law provides various creditor remedies to enforce money judgments. Among those remedies are: recording a judgment lien on real property (CCP 697.310 et seq) or on personal property (CCP 697.510 et seq), recording an execution lien (CCP 697.710 et seq) or general lien upon order of examination (CCP 708.110, 708.120, and 708.205); levy upon personal property (CCP 699.010 et seq), garnishment of wages (CCP 706.010 et seq), post-judgment interrogatories (CCP 708.010) or document production requests (CCP 708.030), post-judgment examination (CCP 708.110 et seq), pursuing suit against third parties (CCP 708.210 et seq) or charging order against partnership or member interests (CCP 708.310) or liens against debtor's pending actions (CCP 708.410) or obtaining an assignment order of debtor's income (CCP 708.510), or appointing a receiver (CCP 708.610 et seq), or amending the judgment to add a non-party alter ego or successor (CCP 187).

From these alternatives, appointing a receiver (CCP 708.610 et seq) is the only

MEMORANDUM OF POINTS AND AUTHORITIES
6

efficacious remedy under the circumstances.

Notably, California law specifically authorizes post judgment appointment of a receiver to aid in the collection process. For example, a post-judgment receiver may be appointed to:

1. Carry a judgment into effect. Cal. Code Civ. Pro. §564(b)(3);
2. Dispose of property according to a judgment or to preserve it pending appeal. Cal. Code Civ. Pro. §564(b)(4);
3. Obtain the fair and orderly satisfaction of a judgment. Cal. Code Civ. Pro. § 708.620; and
4. Preserve the value of property levied upon Cal. Code Civ. Pro. § 564(b)(9).

A post-judgment receiver may be appointed by noticed motion or by ex parte application, with subsequent confirmation hearing on an order to show cause from the court Cal. Code Civ. Pro. §86(a)(8).

Here, a post-judgment receivership would prevent the ongoing misappropriation of the creditors' money. For example, a receiver may set aside the improper transfers and immediately recover the property, often without filing a new lawsuit. *Burrows v. Jorgensen* (1958) 158 Cal. App. 2d 644, 647-652. A receiver may seize control of a judgment debtor's business to preserve assets for application to a judgment. *Crocker National Bank v. O'Donnell* (1981) 115 Cal. App. 3d 264. A receiver may replace corporate board members, officers, and employees. Notably, California law specifically states that appointment of a post judgment receiver is an entirely proper remedy aiding collection of a money judgment. *Olsan v. Comora* (1977) 73 Cal. App.3d 642, 646-647.

In this context, the appointed receiver should have all powers necessary to operate SVTX and SVTIX business(es) to effectuate the confirmed Plan, including hiring/firing of employees and management, entering into and terminating leases, and selling any business assets upon notice and Court approval.

\\
\\

## IV. CONCLUSION

In these circumstances, given Debtor's demonstrated non-compliance with its payment obligations under its plan, the most appropriate collection remedy for creditor CGS and all other SVTX creditors would be appointment of a receiver pursuant to CCP 708.610 et seq. to enforce the payment provisions provided in the confirmed reorganization Plan. In the alternative, if the Court concludes that such remedy is not available to these creditors, then these creditors request that this case be converted to a Chapter 7 proceeding.

Dated: April 28, 2011

CAMPEAU GOODSELL SMITH
A Law Corporation

By: /s/Gregory J. Charles
Gregory Charles
Attorneys for the Plaintiff