CAMPEAU GOODSELL SMITH
A Law Corporation
SCOTT L. GOODSELL, SBN 122223
440 N. First Street, Suite 100
San Jose, California 95112
(408) 295-9555

Attorneys for Creditor Campeau Goodsell Smith

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re:	)	Case No. 01-55137-wsj
	)
SILICON VALLEY TELECOM	)	CHAPTER 11
EXCHANGE, LLC,	)
	)	Trial Date:	April 29, 2011
	Debtor.	)	Time:	9:30 a.m.
	)	Court: Hon. Arthur S. Weissbrodt
		280 S. First Street, Court #3022
		San Jose, CA

## CGS POST-TRIAL OPENING BRIEF ON CREDITORS' MOTION TO COMPEL DEBTOR TO MAKE PLAN PAYMENTS OR ALTERNATIVELY TO APPOINT TRUSTEE/RECEIVER

Pursuant to SVTX's confirmed reorganization Plan, Fred Rubio and Karen Rubio have acted as fiduciaries to SVTX's creditors, tasked with operating SVTX/SVTIX's business (primarily composed of collecting tenant rents and paying bills), and making quarterly payments of net profits from operations to its creditors. In this, they have failed. They have failed to segregate creditors' rightful funds and they have failed to pay those funds to creditors as required under the confirmed reorganization plan. As fiduciaries, they have placed their own interests ahead of the creditors/beneficiaries. Such misbehavior by a Chapter 11 debtor-in-possession would warrant either appointment of a Chapter 11 trustee or conversion to a Chapter 7 case. Breach of fiduciary duty is also actionable under both Federal law and California state law.

Post-confirmation, appointment of a Chapter 11 trustee is not an available remedy.

However, pursuant to F.R.C.P. Rule 69(a), this Court may utilize any state law remedy to enforce the Order confirming SVTX's reorganization plan, and among those remedies is the appointment of a receiver (CCP 708.610 et seq) (comparable to Chapter 11 trustee appointment), allowing for reversion of control of SVTX/SVTIX to the Rubios after creditors are finally paid.

## FACTS STIPULATED OR PROVEN AT TRIAL

CGS contends that the critical facts for this Court's conclusion are *already stipulated in the Joint Pre-Trial Statement* filed in this matter, and may be summarized as follows:

1. After hearing before this Court on August 24, 2007, debtor Silicon Valley Telecom Exchange LLC (SVTX), joined by related entities Silicon Valley Telecom & Internet Exchange LLC (SVTIX) and Rubio & Associates (RA) (collectively Plan Proponents) confirmed SVTX's Third Amended Chapter 11 Reorganization Plan ("Plan"). Said Plan provides for the following distributions: (i) the STVX Effective Date Payment to be paid to Class 3 unsecured creditors, and (ii) any monies received on SVTX's claim filed in Enron's Chapter 11 case, which are to be paid to Class 3 unsecured creditors, and (iii) quarterly pro rata payments of "80% of the net proceeds of Debtor's on-going operations," and (iv) any net preference recoveries. Items (i) and (iv) are not relevant here, thus only distribution items (ii) and (iii) are at issue. **[JPS, 1-2]**

2. Since the Plan Effective Date, SVTX has made the following plan payouts:
    (a) for the calendar quarter ending December 2007, SVTX reported a Balance Sheet cash balance of $161,597.18, and SVTIX reported a Balance Sheet cash balance of $41,664.05. *However, SVTX paid nothing to creditors/CGS.*
    (b) for the calendar quarter ending March 2008, SVTX reported a Balance Sheet cash balance of $40,017.90, and SVTIX reported a Balance Sheet cash balance of $85,072.39. *However, SVTX paid nothing to creditors/CGS.*

(c) for the calendar quarter ending June 2008, SVTX reported a Balance Sheet cash balance of $62,347.51, and SVTIX reported a Balance Sheet cash balance of $25,387.66. *However, SVTX paid nothing to creditors/CGS*.

(d) for the calendar quarter ending September 2008, SVTX reported a Balance Sheet cash balance of $82,255.87, and SVTIX reported a Balance Sheet cash balance of $43,429.54. *However, SVTX paid nothing to creditors/CGS*.

(e) for the calendar quarter ending December 2008, SVTX reported a Balance Sheet cash balance of ($48,433.90), and SVTIX reported a Balance Sheet cash balance of ($113,852.82) -- after deducting four checks dated 12/28/08 - 12/30/08 and written to CGS consisting of SVTX checks for $15,000.00 and $34,000.00, and SVTIX checks for $85,000.00 and $85,000.00[1].

(f) for the calendar quarter ending March 2009, SVTX reported a Balance Sheet cash balance of $98,195.83, and SVTIX reported a Balance Sheet cash balance of $45,296.57. *However, SVTX paid nothing to creditors/CGS*.

(g) for the calendar quarter ending June 2009, SVTX reported a Balance Sheet cash balance of $32,223.79, and SVTIX reported a Balance Sheet cash balance of $88,696.96. SVTIX paid $50,000.00 (check dated 7/14/09) to CGS.

---

[1] For the December 2008 calendar quarter, SVTX reported a negative cash balance of ($48,433.90) and SVTIX reported a negative cash balance of ($113,852.82); this negative balance was due to four checks dated 12/28/08 - 12/30/08 and written to CGS [consisting of SVTX checks for $15,000.00 (delivered 1/15/09) and $34,000.00 (delivered 1/29/09), and SVTIX checks for $85,000.00 (delivered 1/15/09), and $85,000.00 (delivered 1/27/09)]. Clearly, the payment checks were written for more funds than SVTX/SVTIX actually had available to them at the end of December 2008. They were therefore not delivered until January 2009 in order to utilize January 2009 rents to cover them. The only logical conclusion is that the Rubios' primary purpose in writing such checks was not to comply with SVTX Plan obligations but rather to minimize the Rubios' personal taxes which would pass through from the LLCs. Hence, even the substantial December 2008 payments were not intended to "catch up" prior quarters, but rather they were intended primarily to serve the Rubios' personal interests in avoiding personal income taxes.

(h) for the calendar quarter ending September 2009, SVTX reported a Balance Sheet cash balance of $96,770.48, and SVTIX reported a Balance Sheet cash balance of $13,476.00. ***However, SVTX paid nothing to creditors/CGS***.

(i) After CGS filed its motion to compel payments or appoint a receiver/trustee, SVTIX paid $19,500.00 (check dated 10/30/09) to CGS. **[JPS 5]**

3. Until April 1, 2010, SVTX did not separately establish nor account for the 20% Reserve Fund anticipated in the confirmed Plan. SVTX expended monies for building repairs, maintenance and improvements from its general bank accounts, without reference to the 20% Reserve Fund balance available to SVTX. **[JPS 6]**

Based on the foregoing stipulated facts alone, the following conclusions must be reached: (1) SVTX had an on-going *quarterly* obligation under its confirmed reorganization plan to distribute 80% of its quarterly net profits to SVTX's creditors; (2) the Rubios failed to make such quarterly payments when they were due and ***despite having funds on hand*** to do so; and (3) the Rubios did not segregate 80% Creditor Funds from 20% Reserve Funds at any time prior to CGS filing its instant motion. The foregoing ***stipulated facts*** warrant finding of the Rubios' breach of their fiduciary duties and therefore their unfitness in continuing as Plan fiduciaries.

**A.  SVTX Failed to Make Quarterly 80% Distribution Required by Plan**

The Plan provides for on-going quarterly payments to creditors to be made within ten (10) days after January 1st, April 1st, June 1st [sic], and October 1st, until creditors are paid in full. The quarterly payments consist "of a pro rata distribution of 80% of the net proceeds of Debtor's on-going operations." At trial, Goodsell testified that "net proceeds" means "reported cash basis profits" from SVTX/SVTIX income statements; at trial, Fred Rubio also testified to his similar understanding of "net proceeds."

Debtor SVTX made no such quarterly payments (prior to CGS filing this motion).

Debtor did make three end-of-year payouts, but these payouts were not calculated based on the plan-mandated 80% pro rata distribution (or any previously-missed payouts), rather, as Goodsell testified at trial, the end-of-year payouts were calculated to minimize pass-through tax liabilities to Fred/Karen Rubio personally. Debtor also paid CGS the sum of $50,000 in July 2009, however this payout was also not calculated based on the plan-mandated 80% pro rata distribution and appears to be a simply a random sum.

### B. Fred/Karen Rubio Diverted Creditor Monies to Their Own Uses

At trial, Goodsell testified that the remaining 20% funds after the the "pro rata distribution of 80% of the net proceeds" required by the confirmed Plan was to allow SVTX to accumulate a "sinking fund" for significant building repairs and/or building improvements. Fred/Karen Rubio did not establish such a fund – rather they used fully 100% of quarterly net proceeds to fund both repairs and building improvements and other projects. A direct result of the Rubios' failure to pay Creditors Funds on a quarterly basis has been diversion of Creditors' Funds to the Rubios' personally-desired substantial building improvements and other projects – contrary to their fiduciary duties to creditors.

### C. By Failing to File Mandatory Post-Confirmation Quarterly Reports, the Rubios Hid Their Diversion of Creditors' Funds Until September 2009

From plan confirmation on August 31, 2007 until September 16, 2009, SVTX filed no post-confirmation quarterly reports with the Court or with the U.S. Trustees Office. Thus, creditors had no financial reporting to inform them of the Rubios' diversion of creditors' funds. Two years' overdue post-confirmation quarterly reports (9) were filed with the Court in a lump on September 16, 2009, together with Debtor's concurrent ex parte request for final decree filed on the same date. The Court entered a final decree order on September 18, 2009, which it then vacated sua sponte. CGS filed this instant motion within days after the Court had vacated the final decree order. By failing to file quarterly reports, the Rubios hid their diversion of funds.

### D. The Appropriate Legal Remedy is Appointing a Receiver/Trustee

When a fiduciary has violated its obligations to its beneficiaries, replacement of the fiduciary is necessary to prevent further infringements[2]. Any remedy which leaves the Rubios in continuing control of SVTX's business operations simply continues to expose creditors to their further willful non-compliance with the confirmed SVTX reorganization plan. Hence, this Court must either appoint a receiver or trustee (or convert this case to a Chapter 7 proceeding) in order to protect creditors' interests under the confirmed reorganization plan – as the Rubios have not.

This Court's August 31, 2007 Order confirming debtor's reorganization plan is a final judgment under Federal law. Insofar as the Order provides for money payments to creditors, the Order is a money judgment, and Federal Rule of Civil Procedure, Rule 69, sets out the mechanism for execution on federal money judgments:

---

[2]The U.S. Supreme Court has stated that "[t]he concept of leaving the Debtor in possession, as a "receivership without a receiver," was designed to obviate the need to appoint a trustee for the supervision of every small corporation undergoing reorganization, even though it appeared capable of carrying on the business during the proceeding ... But so long as the Debtor remains in possession, it is clear that the corporation bears essentially the same fiduciary obligation to the creditors as does the trustee for the Debtor out of possession. Moreover, the duties which the corporate Debtor in possession must perform during the proceeding are substantially those imposed upon the trustee. It is equally apparent that in practice those fiduciary responsibilities fall not upon the inanimate corporation, but upon the officers and managing employees who must conduct the Debtor's affairs under the surveillance of the court." *Wolf v. Weinstein*, 372 U.S. 633, 649-50, 83 S.Ct. 969, 979, 10 L.Ed.2d 33, 46-47 (1963). See also, *In re V. Savino Oil & Heating Inc.*, 99 B.R. 518, 526 (Bkrtcy.E.D.N.Y. 1989) ("The willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee. And if the debtor-in-possession defaults in this respect, section 1104(a)(1) commands that the stewardship of the reorganization effort must be turned over to an independent trustee."); *Holta v. Zerbetz (In re Anchorage Nautical Tours Inc.)*, 145 B.R. 637, 643 (9th Cir. BAP 1992) ("When the debtor is a corporation, corporate officers and directors are consider to be fiduciaries both to the corporate debtor-in-possession and to the creditors."); *Gumport v. China Int'l Trust & Inv. Corp. (In re Intermagnetics Am. Inc.)*, 926 F.2d 912, 917 (9th Cir. 1991) (debtor-in-possession's corporate officers held to fiduciary standards of "officers of the court."), also *In re York Int'l Bldg Inc.*, 527 F.2d 1061, 1068 (9th Cir. 1975).

(a) **In General.** Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be *in accordance with the practice and procedure of the state in which the district court is held*, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. ...

"The draftsmen of the rule, rather than design a format for supplementary proceedings – with stages, deadlines, and other forms, powers and limitations specially adapted to the needs of such proceedings – decided (perhaps in the hope that such proceedings would rarely be necessary) to borrow the format employed in the courts of the forum state." *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993). Thus, in the Ninth Circuit, Rule 69(a) "permits judgment creditors to use any execution method consistent with the practice and procedure of the state in which the district court sits." *Peacock v. Thomas*, 516 U.S. 349, 116 S.Ct. 862, 869 n. 7, 133 L.Ed.2d 817 (1996); see also, *Cigna Property and Casualty Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 421 (9th Cir. 1998).

California law provides for various creditor remedies for enforcement of money judgments. Among those remedies are: recording a judgment lien on real property (CCP 697.310 et seq) or on personal property (CCP 697.510 et seq), recording an execution lien (CCP 697.710 et seq) or general lien upon order of examination (CCP 708.110, 708.120, and 708.205); levy upon personal property (CCP 699.010 et seq), garnishment of wages (CCP 706.010 et seq), post-judgment interrogatories (CCP 708.010) or document production requests (CCP 708.030), post-judgment examination (CCP 708.110 et seq), pursuing suit against third parties (CCP 708.210 et seq) or charging order against partnership or member interests (CCP 708.310) or liens against debtor's pending actions (CCP 708.410) or obtaining an assignment order of debtor's income (CCP 708.510), or appointing a receiver (CCP 708.610 et seq), or amending the judgment to add a non-party alter ego or successor (CCP 187).

From these alternative collection remedies available to these creditors, appointing a Receiver (CCP 708.610 et seq) is the only truly efficacious remedy under the circumstances. The appointed receiver should have all powers necessary to operate SVTX and SVTIX business(es) to effectuate the confirmed Plan, including hiring/firing of employees and management, entering into and terminating leases, and selling any business assets upon notice and Court approval. The Receiver's appointment would be for a term concluding when all creditors have been paid in full as provided for under the Plan, after which control of SVTX/SVTIX would revert to the Rubios.

## CONCLUSION

It is undisputed that the Rubios have breached their fiduciary duties to creditors under the terms of the confirmed reorganization plan – practically since Plan confirmation. Their actions have been willful and have damaged SVTX's creditors whose interests they were obligated to protect and serve in their fiduciary capacity. They cannot continue to serve as "fiduciaries" without making a mockery of the Order confirming that Chapter 11 reorganization plan and making fools of SVTX's creditors  Under the circumstances, the most appropriate collection remedy for creditor CGS and all other SVTX creditors would be appointment of a receiver pursuant to CCP 708.610 et seq. to enforce the payment provisions provided in the confirmed reorganization Plan. In the alternative, if the Court concludes that such remedy is not available to these creditors, then this case should be converted to a Chapter 7 proceeding.

DATED: August 6, 2012          CAMPEAU GOODSELL SMITH

                               By    /s/ Scott L. Goodsell
                                     Scott L. Goodsell
                                     Attorneys for Creditor CGS